here and its governors, Ms. Pierce and Ms. Jones. They're here to observe appellate argument. And as you probably know, the judiciary doesn't train us that much to be judges, so we learn from observing, too. And I was able to observe my mentor on my right, Judge Wiener, and sometimes you're lucky when a new colleague comes, even though they're 10 years younger, you learn a lot from observing them, and that's the case with Judge Costa. We have three cases set for argument today, and we'll call the first case, which is 17-60001, U.S. v. Fairley. May it please the Court. Kenneth Fairley has now spent almost eight months in prison, yet we still don't know what crime his jury convicted him of. The verdict form for counts two and three of his indictment shows that the jury, disregarding its instructions to return a unanimous verdict, returned a verdict in the alternative, stating that Fairley was guilty of receiving property or converting property of the United States. Why do you think it was in the alternative? I mean, didn't that mean they crossed two of the four out? So isn't the natural conclusion that the other two they found unanimously? Well, but how do you find receiving or — I would agree that they found receiving or converting property unanimously. There was a unanimous verdict as to those two alternatives, but those alternatives are mutually exclusive under the Supreme Court's decision and Milosevic and two decisions from this Court that I will address. The mutually exclusive in terms of punishment but not conviction? Well, actually, Milosevic, White, and Gaddis all indicate that they are exclusive in terms of conviction because they are factually inconsistent. As the — as the concurring opinion in — in — in Milanovic indicated and Gaddis, and as this Court has held repeatedly since then, there are instances in which counts are overlapping, and there are instances in which they are mutually exclusive factually. And this is one of those instances in which they are mutually exclusive factually. Milanovic was 5-4, right? Milanovic was 5-4. Safecracker case. The wife couldn't be both at the same time the thief as well as the recipient of the stolen property. That's correct. And so we ask, how is it that Kenneth Fairley could be both the thief and the recipient of the HUD funds? And — and that becomes the question in this case. Why does it have to be both? I mean, if conversion, which I think is the proper term, would have been sufficient, and you agree the jury found him unanimously guilty of either of those, why — why can't we sustain the conviction on that basis? Why can't you sustain the conviction just on the conversion? Right. Because the problem is that the jury was never adequately instructed what conversion was in this case. Remember, the first count is a conspiracy, and the conspiracy is to violate Section 641. But the — the jury was only given a generic statement that he was guilty of And when you get to the one definition of 641 in this case, it is horribly, horribly flawed. It mixes elements from both halves. I see the mixing. In your brief, did you distinguish your arguments between the conspiracy count and counts 2 and 3? I did. So — but count 1, the conspiracy looks more difficult to perceive spillover prejudice to accepting your argument than counts 2 and 3, because in count 1, the instructions clearly said theft, not receipt. That's correct. And — and the — the indictment itself doesn't refer to multiple objects. It just refers to theft. So why wouldn't count 1 stand under plain error review, even if counts 2 and 3 fall? Because the only place that theft is defined — because it's a conspiracy. It — under 371, it has to be a conspiracy to commit an offense against the United States. So the jury has to be told what that offense was. But the pattern instruction, which is only the theft paragraph, was read. Well, actually, it was not the pattern instruction, because the jury — if you go back and look at the jury instructions carefully, the jury was never told that the conspiracy in count 1 was a conspiracy to commit the theft defined by 641.  Yes. And — I'm reading count 1 jury instruction here. It says, count 1, the defendant is charged with conspiring to commit theft. And then first element, the defendant — at least one other person made an agreement to commit the crime of theft as charged in the indictment. So doesn't that look like, at least as to count 1, it was cabined to the theft theory? Well, it cabins the theft, but you — it's not enough to just say he's guilty of theft. There are lots of different thefts under the Federal Criminal Code. And so the specific theft charged in this count of the indictment is a 641 theft. And so the jury had to go to 641 — the definition of 641 to get its definition of theft in this case. And when it went to the 641 instruction, as the Court noted, that's a horribly flawed instruction. It's a flawed — but, you know, the big problem here, I think you would agree, is we are on plain error view. All of this could have been corrected had the defendant made a timely objection, either to the indictment, Rule 12, or to the instructions, Rule 30. So we're really asking, it's a flawed jury instruction, there's some surplusage in it, but are we going to reverse because it creates a miscarriage of justice? Well, two points, Your Honor. First, I have been advised by all defense counsel, and I understand it's not in the record, that objections were made, charges were submitted. As you can see from the transcript of the supplemental jury charge that was — Okay. Even if there — when you say objections were made and it's not in the record, Rule 30d requires a specific objection. Did your predecessor counsel say we object because the state-of-mind element for a receipt crime was — isn't there? And I — You just don't know. I just don't know. And the problem — so that puts me in plain error, which is why I argued plain error. And as this Court is aware, the Supreme Court granted certiorari last Thursday in a case from this Court on the fourth prong of the plain error question. And so I think that there's no question we satisfied the first three prongs of plain error. Well — Go ahead. You go. I was just going to say the third prong, because, I mean, what is this difference between receipt and converting that — well, you have the burden on the third prong to the difference is, in your view, between the evidence in this case, why it wouldn't allow a conversion conviction? Well, first, it wouldn't allow a conversion conviction because the — at what point are the funds converted? They're clean funds until they come to his bank account. He deposits them in the bank account at that point, and presumably that would be the conversion. But what's missing at that point is, was it the intent to — was there the element of intent to permanently deprive the United States of its property? And so I think the question is — Isn't that a simple element in a situation like this? I mean, clearly, the money was being taken from the government. It wasn't going back to the feds. But it was never going to go back to the feds. That's what I'm saying. I don't think that element was a big problem. I mean, it's more the conversion. But even had all of this been perfectly legal, it would never go back to the feds. And so the intent actually is the critical element in this, because you can look at what happened in this case. There's no question that he had the contract. He was doing the construction. The construction was getting done. Where does the theft come in? Well, the theft only comes in in this case if you can say that, well, this was property of the United States that he had somehow obtained wrongfully. And the question is, well, where in this case is there any evidence that it was obtained wrongfully? And is there all these misstatements about who he was using to do the work and the amount of the work that had been done? I mean, that's what the whole case was about. Well, the whole case was it was tried as a theft case. There's no question about that. The problem is that it was indicted as a receiving case in counts two and three. And count one is defined in terms of counts two and three. What's your best case where that a conspiracy will fall because of a tainted substantive count instruction? The best case I would have, Your Honor, is this court's decision in United States versus Moody. 923 Fed 2nd, 341. And what Moody holds. Is that a plain error review? I don't recall, Your Honor, because what what the problem is, is under Milanovic and Gaddis. Once they find that not only that two mutually exclusive offenses have been charged, this Court found in Moody that when the convictions are inconsistent and not merely overlapping, that reversal is required. You say inconsistent, but it's odd that our pattern only defines theft. Well, no. What the pattern instruction says, Your Honor, is that under 641, if pattern instruction, first paragraph. Right. But there is no second paragraph. Well, there is a second paragraph. There is in the statute, but we haven't helped people practicing in our circuit by even telling them that there are different elements. So so let me turn that into a question. What's the best Fifth Circuit case that describes an element that is required for the second paragraph 641 as distinct from the first? What's the best Fifth Circuit case that says there actually is a different element? And the best Fifth Circuit case on this would be United States v. Strassener, which is 959 Fed. 2nd. 31. And that's the last time this Court considered Milanovic and Gaddis. That's the last time this Court looked at that particular problem that Milanovic and Gaddis deal with, which is when you, when is something overlapping under, say, 641 or 21. 13 is actually the markup. A case that's found in the one count language from both being duplicitous? I don't think it exists. It's sort of an odd statute. You agree? In other words, it's not quite, it's not quite that these are duplicitous. It's just the government has to elect if they get them on both, which then I think leads the government to write their brief saying, therefore, we get to pick and choose. My view of your strongest argument is, well, you can pick and choose as long as you give me every element. But you're saying here you didn't on the receipt. You didn't have the state of mind element. We, we, we didn't have every element either in the instructions to the jury, which they took into the jury room with them. All the elements were, the elements weren't there in the jury instructions for either offense. And we can say, well, if you'd objected, then we would know. But instead, now we have to look at it all. And my gosh, we've got jury notes that tell us they were unanimous as to conversion. They're home free. Well, actually, the first jury note we have is, Your Honor, we're deadlocked. And then there was an Allen instruction. But the problem is that none of the notes are in the record. This district court has some unusual practices with regard to things that are marked for identification but not put into the record. There was a, there was a deadlock in this case. They were given an Allen instruction. They came back about an hour and a half later and returned the verdict. And then they return a verdict that's inconsistent. Because it's in the alternative. And on counts two and three, I would note that there's an element missing from the indictment in terms of knowing that the property was stolen. That's your strongest argument. On counts two and three? On counts two and three. And that's why I keep wondering, what's the best spillover case? You say it's Moody, but Moody may not be a plain error case. Moody may not be a plain error case. Finding a plain error case dealing with a 2113 violation is hard. But one factual question. In the closing argument by the government, did they delineate between count one saying, this is theft, ladies and gentlemen, this is theft, counts two and three, this is receipt, ladies and gentlemen, this is receipt? Absolutely not. They said this is a conspiracy to commit theft and these are two counts of theft. And that's how they treated the counts two and three, even though they plainly say receiving stolen property. I very briefly want to address the hearsay question because I don't think it's a complicated question. The — it's quite simple. Were Fletcher's statements on the floor recordings hearsay? Absolutely. Is there a significant possibility that the statements had a substantial impact on the jury? Unquestionably. The lead prosecutor in this case, who's here today, described them as the very best evidence he could provide to the jury. In denying the motion to — for the new trial, the district judge described them as significant direct evidence of the conspiracy. And unfortunately, the district court then went on to say that even if the exhibits were not in the course and furtherance of the conspiracy, he was going to admit them because they were significant direct evidence. I don't understand that reasoning. What would be the problem if the joint plan extended to the point at which they're talking about what they're going to do in the future together? Well, the problem was the joint plan couldn't extend because there was no joint plan. HUD had canceled all the contracts with Pine Belt. You may have decided this is — we're making a lot of money off the government here. We're just going to keep doing this. We've got a little friction over who gets the money, but boy, let's keep doing this partnership we've got. That wasn't the substance of the discussion, and the district court would have known that if it had looked at either the tape — listened to the tapes or read the transcripts before it made its ruling. That's the problem. The district judge was ruling in the blind, and there's no way around that. He had not read the transcripts, and he had not listened to the tapes before he ruled. The part of the district judge's ruling you just — you quoted about its direct evidence of the conspiracy, he doesn't quite flesh this out, but why couldn't it be the case that it was admissible for non-hearsay purposes just to show the collaboration between the two, because there's extensive discussion between them about all these money issues and the grants. In other words, what was the truth of the matter that was so damaging versus just the evidentiary value of showing their joint conduct? May I respond, Your Honor? The truth of the matter was very simple. In order for — if it — if it's offered for the truth, then it — it falls into the hearsay problem. And so once you offer something for the truth of the matter asserted, it is — But what was the truth that was so damaging to you? What was the truthfulness of those statements that was so damaging? The statements proved the agreement — the entirety of the agreement regarding HUD, because these statements were deliberately elicited. They were recorded surreptitiously by Fletcher, because he was preparing this in anticipation of litigation. He later filed suit against Kenneth Fairley, and he was clearly gathering evidence for his lawsuit — Thought he wasn't going to get all his money back. He knew he wasn't, because the HUD deal was over, and he was out $150,000. Thank you. Good morning, Your Honors. Gaines Cleveland for the government. With me at the council table is Jay Golden, who helped try this case. May it please the Court. Turning first to the Section 641 claim, the ultimate result of the trial was that the jury returned a verdict of guilty, finding defendant Fairley had converted HUD funds, which is a way of violating Section 641 that is found in the statute. This is a means of committing the offense, which was charged in the indictment. The defendant was able to meet the government's proof. There was no surprise. Fairley was — Fairley was proven guilty at trial based on the proof. He presented sham bids, government Exhibits 6 and 7, for both of the projects that was presented in the indictment. He requested Federal funds. What was the crime that he is convicted of on counts 2 and 3? Is it a 641 — is he a thief, or is he a receiver of stolen property? As your Honors are aware, the jury returned a verdict in which they marked, pursuant to the judge's instruction, although on their own, they had a unanimity of theory instruction. They were given four different means — I'm just asking, presently, Mr. Fairley stands convicted of being a thief of government property or a receiver of stolen property? Which is he? I think the — it's fair to say he's guilty of 641. That's what — that's absolutely clear. The means of committing 641, the jury — But you don't deny that the statute and our case law is very clear that there are different elements that establish each of those two prongs, right? That — well, the pattern instruction — Not the pattern. Our case law and the statute both require to be guilty of being a receiver of stolen property, that you have to have had guilty knowledge, that you have to have known the property. Absolutely. But thief does not have to have that element. That's exactly right, Your Honor. Was the jury told they had to find that element? I think that — I think that the best reading of the result is that he was guilty of conversion. Ah, the best reading of the result. But that's the trap you're in, because they were also told that they could convict him on the second, and yet they weren't told that to do so they had to find state-of-knowledge guilty knowledge. They were told they had to be unanimous as to the means. True, but then they were told unanimous as to either conversion or receiving. So at that point, we've got the possibility they were unanimous as to receiving. Either one, they were told, would be satisfactory. This is consistent with the unanimity of theory instruction. The defense requested it. We do have this unusual step of the jury having marked their verdict form. But we don't know who marked that, do we? It was returned by the foreperson of the jury. So the foreperson might have done it by him or herself. The verdict was read in open court for everyone to hear. What was read in open court is exactly what was marked. What's the best case that an appellate court will rely on jury cross-outs? All right. I will tell you there's a — I was looking back at some of the — some of the case law relating to this. I got sort of interested in it, of course, in preparation for argument. There was the Gonzales decision authored by Judge Costa, joined in by Judge Winger, and that dealt with special findings by a jury. And basically — That was an official answer to the court giving question on it. That was an official answer. But the defendant wants to ignore part of what the verdict is. We want this Court to give effect to the jury verdict. The only decision that was really close to this concept was not a reported decision. And it is a very similar sort of fact situation. It was U.S. against Lopez, 11-50326, reported as a Federal Appendix decision, 586 Federal Appendix 461. And the verdict form in that case, if you go back and look at it, you have to find it, the jurors on their own, as to one of the counts, the first count that was on the jury verdict form, inserted, making a false statement. That was guilty as to count 14, they wrote in, making a false statement. And then the appellant's brief in that case, in their footnote 49, on page 49, the jury's note on the verdict form was akin to a special verdict. It limited the scope of the conspiracy to one false statement. And then this Court basically didn't get into this other than to say, besides count 14 on the verdict form, the jury wrote, making a false statement, although the conspiracy charged conduct from this date and that date, the jury's focus or argument on evidence related to a particular certification, the one that's referred to, we will do the same. So it had the effect of narrowing the verdict. So that's really the proposition that we— And there is a difficulty here, but it isn't, in my mind, largely the government's. I mean, there was no objection. There could easily have been at the indictment stage, then especially at the instructional stage. So the government's sort of blind and this Court's blind. Then on top of that, we don't have a great pattern instruction. We've just given you the first half. Nonetheless, it does seem to me the jury gets sent back with a hybrid and the receipt prong doesn't give them the necessary scienter element. So if that logic's right, your position to retain counts two and three's conviction depends on us saying, well, the unanimity meant they found conversion. Conversion was properly defined. We know it was conversion because of these notes. That's the logic, and I don't see a case that has us not in a special verdict context saying, well, these marginalia by the jury, we know they were unanimous on that, and therefore, that's where I'm stuck. You have to go back to the era of the Quill pen probably defined much case law on this type of subject when jurors wrote out their verdict, and you had to sort of decipher what the jury meant. But that's not the era we're in. We're in a different era. And you do have situations where juries will put in, we vote guilty so long as the court is merciful to the defendant. And you say, well, that's not responsive to the instructions. The jury was asked to render a verdict, yes or no. In this case, they were told you need to be unanimous as to your theory, and they indicated their unanimity. So we feel the cross-outs were responsive to a direction. They were directly responsive. They were consistent with, and we think the court should give effect to the jury verdict. The jury spoke, and it spoke very forcefully. It spoke consistently as far as conversion with what's in the statute, what's in the indictment, what was in the instructions, what was in the proof at trial. And the proof at trial was... I asked opposing counsel whether or not in closing argument you had delineated between count one as a theft, as it seems to me it was charged, and counts two more as possessing stolen property. He said no. It was mixed. What's your answer? I didn't go back and reread it. I looked quickly at my co-counsel, and I think that what he said is basically accurate. And do you have any ---- I didn't see in your brief that you tried to defend count one conspiracy, even assuming the substantive counts fall. Maybe it is there, or you'd like to do so now? Basically, we took the position that they didn't ---- he did not develop a count one argument at all. And we basically said you didn't develop a count one argument. But we think that count one says it goes to theft. In fact, early on in the trial, I'm sorry, in the defendant's brief, he said it was clear from the outset the government approached the indictment as charging the actual theft of funds. That's his brief at page 10. So this was proven at the trial. You have proof of the sham bids, the phony invoices. The defendant himself admitted to the HUD Office of Inspector General agent that he was using local labor while claiming co-conspirator Artie Fletcher. His business was doing the work. That's record at 1379. Obviously, in plain error of view ---- That's similar to discharging with a false claim, wouldn't it have? That would have been a clean thing to do. Let me mention briefly about the recorded calls. Did you get the fact Fletcher pled out but didn't testify? That's exactly right. And what happened to the money laundering counts? It was a merger issue. On the calls, we obviously would take the position that the Court properly exercised its discretion in admitting the calls. The calls refer to an ongoing conspiracy between the two and are in further to the conspiracy. Now, Professor Larson says, well, the HUD fraud was over. It was ended because HUD had voided the contracts. Well, that's not accurate. HUD had suspended the contracts. And there's a big difference. In fact, the contracts were the Pine Belt got into good standing by the end of the day. There's a May 21, 14 letter, Defense Exhibit 1, Pine Belt suspension was lifted. So this was not over. So Fletcher tells fairly on the call what was still ongoing. It was ongoing. What other activity was ongoing at this time? There were these two additional projects that were still in the offing. Right. I saw that. But my problem is looking at the indictment, and maybe you're not limited to the indictment on the evidentiary issue, but Count 1 clearly just talks about the two requests for bids that were fulfilled with the government paid out on. So I know you're saying there were these other bids, but doesn't that need to be in the manner and means that it was a larger project? Your Honor, our position is we're not limited to the indictment. Certainly the proof of the conspiratorial relationship and the fact that there was an ongoing relationship. The Watkins case, which we cited on page 34, talking about acts that are not alleged in the indictment, may be admissible as part of the proof. At some point, Fletcher becomes purely a government instrument. And there were more tapes, but the ones that were admitted at trial were all prior to that moment? That's exactly right. That was the significant gap in time. And there was some tension, but if you look at the calls and, of course, under Borgelli, the Supreme Court decision which we cite, you can look at the calls, of course. You've got Fletcher telling Fairley he partnered to do four projects, and even though he was in Fletcher's business serving as the contractor, even though Fairley was, in truth and effect, the contractor. They were going to make money together, a record of 3981. They talked about valuing the relationship, a record of 3940. Fairley tells Fletcher he's just trying to get us past the HUD inspection, a record of 3944. So you definitely have all the makings of an ongoing conspiracy. And as far as the inference requirement, Fairley says the purpose of this call is to let you know I'm moving forward, as I told you I was going to do. It's a record of 3995. He goes on to say he's moving forward to get this stuff completed so we can be on the same team to get the monies that's been allocated to us back. It's a record of 4002. So this is not mere idle talk. They're talking about future dealings, about encouraging their relationship, the type of things this Court talked about in the Green decision, which we cite at page 48. Can I get back on the 641 question? Yes. How do you read Milanovic? Under Milanovic, the government can pursue in a single count both theories of 641, and then has to do what? We're certainly not trying to say that you would get double punishment. And so I think it really is a punishment question under Milanovic. Do you have a good circuit case? Because that decision was written the year I was born. Do you have any case that says that, that that's all it is? It's an election issue at punishment? We cite cases that go to that effect. If you cite them, that's fine. Would you agree with me on this point, though, that the indictment for counts two and three, at least, did contain a receipt theory? The indictments on counts two? The indictment did not. They included a receipt. And then the instructions allowed conviction under receipt for counts two and three. But throughout, the jury was never told of the necessary state of mind for a receipt theory, which is knowledge that the property has been stolen. That's how I put aside the constructive amendment theory. That's my problem. And then it turns on the answer being, well, under plain error review, we also know they were unanimous on conversion, and that was properly instructed. Is that where we are? Actually, Your Honor, the indictment did not include receipt. The indictment, but it had the verbs from paragraph two, conceal and retain. That's exactly right. And then all of a sudden, receipt pops up at the instructional stage, which is why we have a constructive amendment issue, right? That's exactly right. But my point is, so the jury's told in, or the defendant's told in the indictment, then the jury's told at the instructional stage, you can convict on counts two and I'm going to spend half a minute, if I can, just to take a look. Yeah, of course. All the way back at the beginning of the trial, the preliminary instruction, if the judge says that the second county indictment is conversion or stealing of government funds. I mean, this is really a focus on conversion. And of course, we've got the proof that goes for that as well. That may have been the overwhelming proof, but we have this strain that's challenging with receipt, and I don't see the scienter. So again, if it's your argument, does it reduce down to, well, we also know they were unanimous on conversion? Unanimous to conversion and the fact that this is here on plain error review. Okay. Thank you. Okay. May it please the court. The money laundering counts were not dismissed because it was a merger issue. They were dismissed because they failed to state an offense against the United States. They charged the laundering of clean money. And the point behind that is that there was not a decently drafted count in this indictment. It was probably one of the worst drafted indictments I've seen in 37 years. And so that's why they were dismissed. But if it was so bad, why didn't the defendant ever object to it? Well, that's the other problem. There were multiple changes in counsel and trial counsel actually came on board in the point when most of the motion deadlines had already passed. Because obviously the problem is you see a reversible error in the indictment. You choose, oh good, I'll go to trial, hope to get acquitted. And I've got this piece of dynamite there. I can flip it on appeal. I don't think there's a question of sandbagging in this case. What this case needed was active, vigorous defense counsel, which didn't occur until right before trial at a point in time when the judge had ruled that most of the motions were, they were beyond the time for. Then it didn't occur again at the jury charge process when it all could have been corrected, too. Well, I got a note from trial counsel, from all three trial counsel, saying that they specifically objected to the 641 state of mind at the charge conference, and they will submit affidavits to that effect. But the problem I have is that's not. And there are ways to supplement, and it hasn't been supplemented. That's correct, and I was filing motions to supplement the record up until the end of last week because of the unorthodox way in which this court handles jury charges. The representation of co-counsel is that they asked for the guilty knowledge for receipt, and the district court said no, I won't give it. The note said they specifically objected to the 641 state of mind instruction, and they will submit three affidavits to that effect. But we're still, today. In the world of plain error and their responses, well, we know they were unanimous on conversion, and that was always cleanly charged straight through, so plain error review, conviction stand. Actually, it was not cleanly charged all the way through. If Your Honor will look at the chart that I provided the court, we start with the plain language of the statute, then we go to count one, because that's the only one that actually could be salvaged in this case. I'm going to be a little persnickety. Did you give this to opposing counsel? I did. The question becomes, can we salvage count one? Because counts two and three are clearly deeply flawed. Count one, though, charges a specific conspiracy. It is a conspiracy to violate 641. But if you look at the... It's a conspiracy to... Violate... Theft. Theft. It says theft. No. It doesn't say receipt or possession. It says theft. But the indictment says 641. True. And then the jury instructions say, ladies and gentlemen, on count one, that's a theft charge. Yes. Yes, it does. And then it stops. I know. But then the theft pattern was given. Well, no. Actually, the theft pattern wasn't given. What was given was the 641 instruction. And if you... Because that's the only definition of theft given in the jury charges. And if you look to pages... Aren't we at a really technical level now, which is what plain error says? We really can't... If we've got these notes that say they saw theft and if theft was charged and told, even if there's surplusage about receipt and conceal and retain, why isn't count one still going to stand? Because they weren't actually charged... The charge did not actually give them the elements of... What element was missing for a paragraph one offense? What element was missing was that if you look at... It's in the record at pages 41-39. It says, you must be convinced the government has proven each of the following beyond a reasonable doubt. First, that the money described in count two of the indictment belonged to the United States and had a value in excess of $1,000 at the time alleged. And second, that the defendant knowingly and willfully converted, received, retained, concealed or converted such money. And third, that the defendant did so with the intent to convert said money to his use or the use of another. That is an amalgamation of both halves of the statute that leaves out the other element of knowing if you're going... It's an amalgam, but it does happen to contain all of paragraph one. And then jury notes that they got unanimous on conversion. Well, actually, it doesn't contain all of paragraph one because it leaves out embezzled and all the other language of paragraph one. I know you're out of time. I have one question. On the verdict form, do you have any other plausible explanation for the two crossouts other than a response to the unanimity instruction from the court? I do not. The jury was instructed. They were instructed that there were four means. They were told to return one. The jury clearly disregarded the instructions and returned two, one of which wasn't in the indictment. But there's nothing wrong with returning... Other than the other problems, as a general matter, there's nothing wrong with finding two or three or all the different means met. Well, actually, there is when the word or is between the two words. And that's one of the problems in this case. And the other problem is if you return a verdict of guilty on a charge that's not in the indictment... Well, I understand. That's a whole other issue. Thank you very much. Thank you.